MILLER v. THE BOARD OF COMMISSIONERS OF PUTNAM COUNTY.

BOUNTIES.—SUBSTITUTES.—The legalizing act of *March* 3, 1865, embraces the case of bounties to persons furnishing substitutes, and applies to cases where the appropriation was made before the passage of the act, and the bonds or orders were issued afterwards.

APPEAL from the *Putnam* Circuit Court.

GREGORY, J.—On the 3d of *February*, 1865, the board of commissioners of *Putnam* county made an order, among

other things, directing the auditor of the county to issue, for the benefit of *Franklin* township, in that county, forty-five orders, styled first class orders, each for two hundred dollars, payable *April* 1, 1866; and forty-five other orders, styled second class orders, each for a like sum, payable the 1st of *April*, 1867; and that the auditor deliver to each person furnishing a substitute soldier for the army of the *United States*, to the credit of that township, two of the orders above described, one of each class. Under this order of the board, the appellant furnished a substitute to the credit of that township, and on the 8th of *April*, 1865, there was issued to him, by the defendant, the county order sued on. The validity of this county order is involved in this case. In *Coffman* v. *Keightley et al.*, 24 Ind. 509, the foregoing order of the board was the matter in controversy. That was a proceeding to enjoin the issuing of county orders under and in pursuance of this order. The only question in the case at bar, not involved in that, is, does the legalizing act of the 3d of *March*, 1865, (Acts 1865, p. 126,) embrace bounties to persons furnishing substitutes. The language of the first section of the act is broad enough to cover such an appropriation. The words, "for the purpose of procuring or furnishing volunteers and drafted men for the army or navy of the *United States*," embrace, we think, clearly the furnishing of a substitute. The substitute is a volunteer; he becomes as much a soldier of the *United States* as his principal would have been had he volunteered. The government is aided by having a soldier furnished to her. It is difficult to see what legal difference it can make to whom the order was issued, whether to the principal or to the substitute.

But it is now urged, that the second proviso of section 2 of the act of *March* 3, *supra*, excludes "appropriations made," and confines the legalization to "bonds, orders, or other evidences of indebtedness, issued to raise money to pay bounties to volunteers and drafted men, who had entered the military service of the *United States*, or to main-

Miller *v.* The Board of Commissioners of Putnam County.

tain and support the families of volunteers, drafted men and substitutes." It must be admitted that the question is not free from difficulty.

In the construction of statutes, we must look to the intention of the legislature; and it is a well settled rule, that where any cause of doubt arises, although apparently the doubt attaches only to a particular clause, the whole statute is to be taken together, and to be examined, to arrive at the legislative intent. "The best expositors of all letters patent," says Lord COKE, "and acts of parliament, are the letters patent and the acts of parliament themselves, by construction, and comparing all the parts of them together." At the time the act passed there was pending a draft, under the last call of the president of the *United States,* for three hundred thousand men. This State was then actually engaged in filling her quota, by volunteer enlistment, to relieve her citizens from that draft. Under this pressure, the legislature then in session was appealed to for relief. The first section of the act of *March* 3, *supra,* in express words legalizes "appropriations made." By the second section, "any levy and assessment for taxes, made by any incorporated city or town, or board of county commissioners of any county of this State, to procure means to pay any appropriations by them made, or bonds and orders issued for the purposes in the foregoing section enumerated, are legalized." By the third section, it is provided that "after the quota of troops now due from this State, on the last call of the president of the *United States* for three hundred thousand men, is filled, it shall be unlawful for any board of commissioners of any county, or the municipal authorities of any city or town, of this State, to make any appropriations from their respective treasuries, or to issue any bonds, orders or other evidences of indebtedness, for the purpose of paying bounties to volunteers, drafted men or substitutes who have, or may hereafter, enter the military service of the *United States.*"

In view of a legislative intention so clearly evinced, a

proviso, to have the effect claimed for this, must be directly repugnant to the body of the act. The proviso, taken together, is this: "That the provisions of this act shall not be construed to cover or include debts contracted by individuals to relieve themselves from any draft that has heretofore taken place, nor shall the same be construed to authorize the assumption or payment of such debts by any county, town or city; *but the provisions of this act are intended to apply to the action of counties, towns and cities, which have acted through their legally constituted authorities, and have issued their bonds, orders, or other evidences of indebtedness, to raise money to pay bounties to volunteers and drafted men, who have entered the military service of the United States, or to maintain and support the families of volunteers, drafted men, and substitutes.*" That portion of the proviso in italics seems to be an explanation of the main subject of the proviso itself, and contains no negative words making it directly repugnant to the body of the act. Suppose the act is intended to apply to "bonds, orders, and other evidences of indebtness," it is equally clear, taking all the parts of the act together, that it is also the intent to embrace "appropriations made." This question was somewhat considered in *Coffman* v. *Keightley et al.*, *supra*, but a discussion of it in the opinion was omitted. But in view of the earnest and able manner in which it is now pressed upon us, we feel it due to the parties interested to give the reasons for the construction we place upon the act.

The judgment is reversed, with costs, and the cause remanded, with directions to overrule the demurrer to the complaint, and for further proceedings.

*S. Turman,* for appellant.

*D. E. Williamson* and *A. Daggy,* for appellee.